The next case on the call of the docket is Agenda No. 6, Case No. 124848, Kevin McAllister v. Illinois Workers' Compensation Comm'n My name is Carolina Zelinska. I'm here on behalf of the appellate, Kevin McAllister, along with Co-Counsel Ian Elkinbaum and Rachel Sinnon, seated at Council table. This appeal concerns the arising out of requirement of the Illinois Workers' Compensation Act. And we are here today, Your Honors, asking for consideration for two main issues. First, we're asking that the Court reinstate the decision of the arbitrator and reverse the Commission's decision because the Commission's denial of benefits was based on its application of an incorrect standard of law and should be reviewed a no vote. Secondly, we're asking this Court to expressly reaffirm that the proper standard necessary to meet the arising out of requirement in the Act is the standard set forth by this Court in Caterpillar Tractor. Now, I'd like to start with a standard of review. As stated by this Court in 2002 in the Bagot v. Inductional Commission decision, whether a claimant must prove certain elements to establish a compensable claim is purely a question of law. And findings of the Commission based on an application of incorrect conclusions of law are not entitled to deference. In this case, we have Commission findings which were based on incorrect conclusions of law. The Commission's entire analysis focused on mutual risk. They believed that the proper standard was determining whether the risk of injury was particular to Kevin McAllister's employment. And they said that in their decision twice, particularly. Now, that's incorrect. The Commission failed to make a finding as to whether or not the risk was distinctly associated with his employment. There was no factual finding pertaining to that legal analysis whatsoever. And without a factual finding, the manifest weight standard of evidence does not apply. This is a de novo review, Your Honors. And is that basically, Counsel, because the majority employed Caterpillar Tractor, right? And then the Commission, the majority even found that the Commission employed the wrong test, right? Correct. So as a result of that, since we see they employed the wrong test, at least as far as the majority is concerned, you're saying there's no deference then given to the factual findings of the Commission? Yes, absolutely. I agree with that. And even to second that, there really were no factual conclusions made to that legal standard, which makes it even worse because we can't weigh the evidence. The evidence was never mentioned in the Commission's decision. They only discussed what they thought was particular to. And they simply referred to the Young case, which was another appellate court case, and said, well, your claimant was not reaching into a deep, narrow box. Therefore, it's not particular. They didn't even discuss the fact of our case. It's peculiar. The appellate court's decision first held that the Commission's decision was not against the manifest weight of the evidence, but then rejected the test that the Commission employed, right? Correct. The Commission employed the neutral risk analysis, and we're arguing that was the second test that they could have employed, but not until they employed the first test. And the first test should have been distinctly associated with. This leads me directly to my point, Your Honor, that if the case and the tests were applied correctly, the Commission would have found that this was a distinctly associated risk. And I say that because following Caterpillar Tracker, the Commission would have asked whether Kevin McAllister's act of kneeling in the walk-in cooler was distinctly associated with his employment. And then they would have gone to the three-acts analysis and asked if it was an act he was instructed to perform, had a common law or statutory duty to perform, or it was an act which he might reasonably be expected to perform incident to his assigned duties. And I'll skip the first two. We know that there's no factual evidence to support those first two acts. But turning to the third act, was kneeling in the walk-in cooler to look for care an act which a sous chef might reasonably be expected to perform incident to his assigned duties. And that's the key word here, incident. And that word is defined by this report, both in Caterpillar Tracker and Orsini, and it states the risk is incidental to employment where it belongs to or is connected with the fulfillment of duties. So really the crux of the case and the issue as we frame it is whether looking inside of a walk-in cooler for a food product misplaced by a cook was connected with Kevin McAllister's job duties as a sous chef. That is the crux of this case. And based on the unrebutted testimony of the petitioner, the answer is yes, undeniably it was connected to his duties. It seems to me there's cases going both ways on this. How do you deal with the cases that say for an injury to have arisen out of the employment, the risk of injury must be a risk peculiar to the work or a risk to which the employee is exposed in a greater degree than the amount from the general public by reason of his employment? That's a great question, Judge, and it's actually something that we noted in our initial brief too because we also saw that happening, that some cases were referring to peculiar and then a greater weight component and some weren't. But really when you start diving into all of these facts as we did, what's really happening here is when the court's using the word peculiar, they're sort of inserting that distinctly associated aspect into it. And they're essentially saying we think that a risk is peculiar to employment. It's related or distinctly associated with employment if it follows those three acts. If it's not peculiar, then it has to be a neutral risk. It's one that doesn't have any particular employment characteristics, and then you employ neutral risk. And that's exactly what Caterpillar Tracker does. So I think there is something to be said about those words sort of being interchanged and almost in a way confusing lower courts because I do think that's happening here. I think a lot of courts are looking to the appellate court to give them the response of what is the proper analysis? And the appellate court for quite some time was following Caterpillar Tracker and everything was going well for 30 years. Cases were being unanimously held until the ADCOC decision. And the ADCOC decision was a 2015 decision that essentially changed the standard. And what happened there is the court decided we're calling it an expansion of law. Certainly it can be characterized any way your honors wish, but what the appellate court said there was this is the test. You're using the wrong test. This is what the test should be. So there's a conflict between the two cases? Absolutely. The majority in ADCOC is in conflict with the majority in our decision. How does your proposed standard fulfill the purposes of the Workforce Com Act? Here's your recommendation. Sure. So our standard is the standard that this court has followed. So we're not really asking to change the standard. We're just asking to reaffirm.  What our standard says is this. Anytime an employee has an injury, you look at that injury and you ask, how did that injury occur? What was the act that caused that injury? And involved within that act would be a risk. So the question becomes, one, was that a risk that was distinctly associated with this employee? And the way to find that, you employ the three-act analysis. You ask those three questions. Was this individual specifically instructed by a supervisor to do that activity? If the answer is no, you move on. Was it a common law duty, maybe a sheriff or a police officer type of analysis? Or, three, was there a reasonable expectation that this individual would perform that act incident to his assigned duties? And, again, the word incident is belongs to it or is connected to. So that's the test we propose. If it fails, which, Your Honors, it has in the past. Not every case has been found distinctly associated. We know that. It's happened all the time. And even this court has held that way in a situation where a teaching assistant was turning in a chair, heard a noise and turned, and this court said that's not distinctly associated. So many courts have found the first part not to apply. If that happens, then we move on to neutral risk analysis. We say, okay, since that's not distinctly associated, then it either is a personal risk to the individual or a neutral risk. If it's a neutral risk, we ask quantitatively or qualitatively, was there an increased risk that connected it back to employment? If the answer is yes, it's compensable on the arising out of standard only. Obviously, that's all we're talking about here. If it's found not to be qualitatively or quantitatively increased, then the analysis ends right there, that it's not a compensable claim. So that is what we're proposing, and that is what the law has done for the past decades. Counsel, the special concurring justices argued that to adopt your position would lead to an unwarranted and unworkable expansion. Yes. It comes to mind that if that's true, there should be many cases in the books in which workers who were injured doing specific job tasks were denied compensation because there were injuries involved in everyday bodily movements. Are you aware of any cases from this court where the employee injured by a specific job task was denied compensation? By this court? Yes. So, yes, there was a case, Board of Trustees. It was a case where there was a teaching assistant that was sitting in some sort of classroom, and he used to work out of that classroom. He was both a teaching assistant and a student at the university, and he heard a noise as he was grading papers for the professor. He heard the noise outside and turned his body. So the court did do an incidental to distinctly associated analysis there and found that turning activity, although I would assume that would be a common bodily movement. I think the court would agree. They said it was not incidental to. Then they did the neutral risk analysis and said, well, there was no qualitative or quantitative evidence to support that it was increased risk, and they found against that teaching assistant. So, again, I don't think every single case would be compensable under the law that we are asking this court to reaffirm, and I think the main reason for me to say that is on its face it hasn't been. There have been countless cases that have found the opposite, including appellate court cases, obviously, such as Newton that the special concurrence relied on. Other cases in the Supreme Court were Illinois Telephone Bell Company. That wasn't an injury caused by a job task, the case that you mentioned. The Illinois Bell case? The one you were just mentioning, the Supreme Court case. For the trustees? Yeah. Yes, it was a job injury. He was a teaching assistant. He was employed by the school, and at the time of the injury he was grading papers, so it was in the course of his employment. It just didn't arise out of it. On that topic, Judge,  and arise out of employment is incorrect for the reasons I noted, and I also want to mention we sort of use the term compensability and arising out of interchangeably, and I want to make sure that we are differentiating the two because they are not the same. The only thing that our case involves is an arising out of determination. That's all we're really asking based on this analysis. If it's an arising out of analysis and we say, yes, that requirement is met, that doesn't mean the case is compensable. Arising out of it deals with legal causation. It does not deal with medical causation. So in cases that we can think of such as what if I turn the doorknob, I'm accepting a delivery from a delivery person and I turn the doorknob and something happens to my wrist, maybe a ligament tears. Is that arising out of? Well, my answer would be we look at your duties, we apply the three acts. If in fact it was your job to accept deliveries and to do that you had to open the door, yes, it arises out of your employment. Does it mean your case is compensable? No, not necessarily. We still have to apply medical causation. The defense can still bring independent medical examiners, medical experts to testify. It isn't plausible that turning a doorknob once would cause this injury or this diagnosis. So I say that because I think there's this slippery slope argument that's always hanging around saying everything will arise out of and every case will be compensable. We're forgetting how many elements an injured worker has to meet in order for that to happen. There's medical causation. There's employee-employment relationships. There's a slew of other things we have to meet, so we can't call that compensability. And lastly to this point, I want to sort of mention the purpose of the act was to protect workers against risks and hazards, taken in order to perform their employer's task. So to me, if the employee is performing an employer's task, then rationally, more often than not, you are going to find that it arises out of. It should be that way, unless these employees are detouring from their employment or there are obviously scenarios such as Brady where you're standing at a desk and a car comes crashing through the wall. But certainly in most situations, more often than not, you should find arising out of if that employee was performing their job. So as just the purpose of the act and sort of a rational argument, I think, in and of itself, we shouldn't be scared to say a lot of cases will arise out of. I think that they should arise out of employment. I'd like to go back to just the facts of our case. We were talking about had the Commission applied the standard that we're asking this Court to apply, what would have happened? So here are our facts. We have a sous chef, sous meaning under, under the chef, second in command. He's second in command of the kitchen. He says the chef, the main chef, is not in the kitchen at the time of the injury because he's in an office nearby. So my only inference that I would draw from that is that Kevin McAllister is in charge of the kitchen at the time of his injury. So he says, I'm in charge of this kitchen. My cook is the subordinate. The cook misplaces the carrots. Kevin then testifies, my duties are to arrange a walk-in cooler and prepare food. After his cook misplaces the carrots, he goes into the walk-in cooler that he testifies he arranges. He looks on the shelves. He doesn't find it. He kneels on the ground to look underneath to see if the food item fell underneath the shelf. He says sometimes that happened. All of this, to me thus far, has a nexus to his employment. It's certainly connected with and distinctly associated with that job. So the next question is, did he have to kneel? Because as your honors know, the injury report has stood up from a kneeling position. So why was he kneeling? He indicated that the cooler has multiple shelves and that food sometimes falls underneath. And so to protect under that bottom shelf, he had to kneel on the ground to look underneath. So was kneeling necessary? Well, the only evidence here is Kevin McAllister's testimony saying, yes, I needed to do that. Defendant didn't challenge his testimony of how the injury occurred. Defendant didn't bring witnesses to say, no, we don't kneel as cooks. We don't kneel as chefs. No one has to do that in our kitchen. Defendant didn't bring any witnesses to say he was written up for kneeling. He shouldn't have been doing that. He was recommended for it. The only testimony is Kevin McAllister's, and he said I had to do that to find that food product or service. So under these facts, Your Honors, I think it would be illogical to hold that those duties were not connected with him fulfilling his job as a sous chef. And I think the special concurrence agreed with me in our case in terms of analyzing those facts under our standard, where the special concurrence disagreed as they think that this should be a neutral risk analysis only. I see my time is getting close here, so I just want to finish. For the reasons that we've discussed thus far, Your Honor, we request that this court expressly reaffirm and reestablish the Caterpillar Tractor Law. And we request that this court reverse the commission decision and reinstate the arbitrator's decision using a de novo standard of review. The arbitrator's decision did acknowledge every single issue. It did state their responses as to temporary level of disability, medical bills, et cetera. So the entirety of the case was considered and all of the evidence was considered by the judge. I think it would be appropriate to reinstate that decision. If there are no other questions, I thank you for your time. Thank you, Ms. Zelenka. Mr. Kolecki? May it please the court, counsel? My name is Jason Kolecki. I'm here on behalf of North Pine, the appellee in this matter. First, I'd like to start off with the issue of the standard of review. Justice Thomas, I believe when you talked with counsel about the appellate court's position and the majority's position regarding the standard of review, I don't think it was expressed properly because the majority actually ruled in favor of my client. They found, based upon the manifest of the weight, that there was not evidence to show that the act of going from a kneeling to a standing position was peculiar to the appointment. That's a question of fact. Now, I agree with counsel in the Bagot decision that what elements are necessary in order to prove the issue is an issue of law, and I would agree that was a de novo review. However, once you find that legal analysis or determine what legal analysis is proper, you then have to apply the facts the commission determined to that legal analysis, and if there's facts to support, it's a manifest weight standard. So I would argue that the appellate court and the majority did not find that the wrong legal standard was used because, in the end, they actually awarded no benefits and found in favor of my client, and they awarded it under the manifest weight, the evidence standard. With that said, the purpose of the Illinois Workers' Compensation Act is to protect employees against risks and hazards which are peculiar to the nature of the employment he is employed to do. For an injury to have arisen out of the employment, the risk must be a risk peculiar to the work or a risk which the employee is exposed to a greater degree to the general public by reason of his employment. This premise has been reiterated time and time again by this court in analyzing the issue of risk and arising out of it. This court defines peculiar to mean peculiar to a line of employment, not common to other kinds of work, and not common to the general public. Most recently, this court appears to have interchanged the words incidental and peculiar. In the Brady case, they used the word peculiar when discussing the issue of arising out of and assessing risk. In the Cisco case, they used the word incidental when assessing the issue of risk and arising out of. I would argue today that the interchanging of those words does not change this court's intent or the meaning that they use those words for. In the end, no matter what word is used, the intent of the Act is to protect employees from risks not common to other positions of employment and not common to the general public. Mr. Counsel, if this situation or this Act doesn't qualify as arising out of claimant's employment, then what kind of injury would? How would he pick up the carrots? Well, he wasn't picking up the carrots, actually. He was just going from a kneeling to standing position. To find them. I'm sorry? To find the missing carrots. Is that not right? Well, it was afterwards. He knelt down to find the carrots, but he injured himself after he did not find the carrots standing up. But I would argue that that is, you have to look at exactly in what manner was he going from a kneeling to a standing position that differs from other type of position. In this situation, the facts are clear. The commission determined. He wasn't carrying anything. He didn't strike his knee at anything. There was no defect in the premises. There was nothing. He wasn't doing anything but going from a kneeling to a standing position on a single occasion. Something that I do, something that other jobs do. This is an Act that's very common to other positions of employment and very common to the general public. He testified himself that this Act was no different than him looking for a shoe underneath his own bed. So how could you say that an Act that is common to multiple positions of employment and an Act that is also common to the general public is peculiar to the job duties of a shoe shiner? I don't think you can. And I think that's a question of fact that the commission determined. And I think whether we agree with that inference that it isn't, we have to give deference based upon the manifest weight of the evidence. Mr. Fleck, I'm going to give you three different scenarios. You tell me if they're personal, neutral, or employment related. Okay. All right. An employee blinks out a contact lens, kneels down to pick it up, and hurts his knee when he stands back up. I'd say that's neutral. Neutral. Sound like a gunshot rings out and all the employees drop to their knees. It turns to be a kid sitting off firecrackers in the parking lot. An employee injures his knee when he stands back up. I would say that's neutral. And a kitchen employee kneels to look for a tray of misplaced carrots in the walk-in cooler and injures his knee when he stands back up. I think that would depend on what the job duties of that employee are. And I think that would be a question of fact. In this situation, the commission determined that the job duties were not peculiar to that of a sous chef. And I would actually point out, Justice Thomas, that the petitioner admitted at the time he was looking for the carrots, he wasn't even performing his job. He was doing that on behalf of a cook. He had an opportunity to testify what his job duties were. He did. And not one involved the act of kneeling. He didn't even testify when they asked what are your job duties were. Well, sometimes I prep food. Sometimes I make sauces. I arrange a walk-in cooler. And you know what? Sometimes I have to retrieve items and sometimes I have to kneel. He didn't say any of that. These are all questions of fact. And these are questions the commission looked at when they performed their analysis. Why isn't the one where the employee blinks out the contact lens, why wouldn't that be personal? It could be. In this situation, neither party has argued a personal risk. But either way, if this court wants to say it was a personal risk, personal risks are determined not to be related to the employment and therefore be in my favor anyway. We've held that injuries from a fight are compensable if the fight was over a personal matter. Correct. So if the guy next to you punches you in the nose because of work, it arises out of employment. If the same guy punches you in the nose because of a personal matter, it does not arise out of employment. Correct. Doesn't that suggest that we have to look at the reason for the injury and not just the mechanism of the injury? Well, I think in that situation, if I'm not mistaken, there is a specific ruling when it comes to fight cases and special doctrines. Same as mental cases, same as lightning cases. I mean, traveling employee cases. This court has ruled upon different factual scenarios. In this situation, this is just the act of going from a kneeling to a standing position. I would analogize it to going downstairs. If counsel is correct and you just have to perform one of the three acts, I use the analogy of what if a principal calls a teacher down and says, at the end of your shift, can you come down to the first floor and talk to me? And she simply, at the end of her shift, walks down the stairs and trips and falls. Well, she was instructed to do it. Is that now a compensable act? Just because she was instructed to do it despite the fact that there was no risk involved, great for the general public and no risk, peculiar to that position? Ms. Zielinska, though, said that the supervisor was not there, and therefore he became, Mr. McAllister became more or less the supervisor, the person in charge, and the cook needed this item. Is he supposed to not get it? Why can't the cook get it? Why can't a busboy get it? But the cook's job isn't necessarily that. It may be it isn't Mr. McAllister's job, but in order to perform the cooking service where the ultimate person is going to eat, people have to work together, don't they? Correct. But does that automatically mean that if you were doing somebody else's job, how could you say that job is peculiar to your position? And I think that's what the commission looked at. I mean, if that's a factual question, then that's what this Court has defined as peculiar. Isn't that a little form over substance here? Is it form over substance? I don't believe so. Because I think as the special concurrence indicated, it is the risk is associated with the act, not the act's relationship to the employment. What we're arguing here, I would argue, Justice Kilgore, you wrote the baggage decision. In that decision, there was no dispute. He was performing his duties as a teacher when he had a heart attack. But this Court did not stop there. They said, well, wait a minute. We have to look to see if he was in a greater amount of stress than the general public. They still performed a neutral risk analysis. They didn't just stop and say, well, one of the three acts was performed, so therefore it's automatically arising out of. The Illinois Workers' Compensation Act is a two-pronged element that needs to be satisfied. So the mere fact that you're in the court cell does not automatically mean that it arises out of. And in this situation, it's a factual question as to whether the duty that counsel indicates that the right analysis is not used. Well, there's only two analyses in this situation because neither one is arguing personal risk. It's either an employment-related risk or a neutral risk. And the Illinois Workers' Compensation Commission performed both analyses. Based upon the facts, they determined the act of going from a kneeling to a standing position on a single occasion was not peculiar to his job. Would it be different if Mr. McAllister was slicing carrots and he dropped one on the floor and he bent down to pick it up and was injured? I don't believe so. But I also think that that would be up for the commission to determine. I don't believe that would be something that whether I agree with it or not, I think that's a question of fact as to whether that activity itself is related to his employment. I don't think that's a legal question. Could you help me? I'm confused. No problem. You seem to be arguing here that you, of course, want us to affirm. Correct. Because on the factual issues, both the majority opinion and the concurrent opinion both agreed on the facts that this claimant should not recover. They agreed on the facts based upon their analysis, yes. Correct. So you want us to affirm the judgment line, but are you engaging in their discussion as to whether it's the appropriate analysis? Are you accepting the ‑‑ are you urging that we adopt the concurrence? Yes, if it was up to me. I mean, ultimately, I think in the end ‑‑ Is that what you're arguing? Yes. I'm arguing that I believe the special concurrence in these type of situations is correct. Because I think Justice Holder is correct in saying, if you are performing an everyday activity, if you're walking, bending, reaching, that activity cannot be, unless you're doing it in a specific manner that's different than the general public performs, that cannot be considered peculiar to your job or peculiar to other positions. But if we didn't agree with the special concurrence, and we agreed with the analysis of the majority, you would still agree that that's the correct result? Well, the appellate court agreed with me, and I would still agree because based upon the facts, the Employment Workers' Compensation Commission performed that analysis, and they determined, based upon the facts, that under the employment‑related risk he was not exposed to. So under either theory, you would prevail? Right. I mean, eventually, when my time is up, I'll be asking this court to affirm whether you use either analysis. But, yes, I believe the factual evidence when applied to either analysis, the special or the majority, would be proper. We said in Caterpillar Tractor, if an employee is exposed to a risk common to the general public to a greater degree than other persons, the accidental injury is also said to arise out of his employment. Correct. Doesn't our use of the word also show that the increased risk analysis was not meant to apply to workers who are injured doing job tasks? I'm not sure if I understand that question. I apologize. Well, I'm just ‑‑ the question is what it is. I mean, what does the also mean in that phrase? It says the accidental injury is also said to arise out of his employment. Well, if he's at a greater risk to the general public, then, yes, it does. But that's a neutral risk analysis. In Caterpillar, this court used a neutral risk analysis. They determined that at the time that he stepped off the curb, he was not at a greater risk to the general public. The commission, in our case, performed a neutral risk analysis. They looked at it quantitatively and qualitatively. Based upon the quantitative, they found that the evidence in the record, which we are bound by, showed that he did it one time and one time only. There's no evidence to indicate otherwise. And they looked at the qualitative by saying he didn't strike himself, he wasn't carrying anything, and there was nothing about the premise that increased his risk. And those are all questions of fact. And I believe they're unrebutted questions of fact based upon Ms. Callister's testimony. And, therefore, under the neutral risk analysis, if this court decides to adopt that in these type of situations, I believe the defendant, Northpaw, in this matter, would still prevail. The problem with the three acts analysis, whether you have a common law duty to perform, a statutory duty to perform, or something reasonable is believed that you would do, that's a reasonable and foreseeable standard. That's not what the act says. The act says that it has to be in the course of and arising out of, not in the course of and foreseeable to your job duties. This two-frog analysis was so important that in 2011, when the amendments were made to the act, a new section of the act was created that specifically stated that. Section 1B.3.D. was added to the act in 2011 to say for an injury to be compensable, it has to arise out of and in the course of the employment, not arise out of and something foreseeable. In the course of, if you adopt the theory that the trier of facts simply has to say, was he doing something that was reasonably expected, you are combining the two frogs. And by doing so, you'd be adopting a positional risk theory, which this court has rejected, which is not the law in Illinois. I mean, not to go back for a history lesson, but in 1911, when the act was first drafted, there were two sides. It was a grand bargaining. Both sides gave up rights to come up with this act to say, you give up something, I give up something that's best for everybody. But when they did that, they determined that it was a two-frog analysis, not just if you're in the course of and doing something possibly related to your work or incident to your work. And I look at the Bagot case again, and Justice Kilbride, you define arising out of and in the course of in that decision. And to quote you, if you don't mind, in the course of, you said, when it occurs during employment at a place where a worker may reasonably be performing employment duties, and while a worker fulfills those duties and engages in some incidental employment duties. That's in the course of. That's possibly what we're talking about. Somebody at work doing something that they might be expected to do. That's in the course of. I argue, as Justice Holdridge argued in the appellate court, and the special concurrence, that the three acts just puts you in the course of. You need further elements. And you went on to indicate arising out of is the risk connected or incidental to the employment that's a causal connection between the employment and the accidental injury. It's not just performing an act. It's the risk. The intent of the act is to protect people from risks, not from the acts they perform. We all perform acts every day. But that does not mean that there's a risk that's different to the common general public or other professions. If what I see when I look at the majority decision, despite the fact it was in my favor, but I see that analysis, there's an automatic assumption because you're doing something work-related that there's a risk involved, and a risk that's greater than the general public and a risk that's peculiar to your position of employment. And I just don't think that's the fact. I think the risk is associated with the act. And I think that's where the special concurrence gets it right. In Memorial Medical Center, we didn't say anything about neutral risks or everyday bodily movements. But we held that the injury was compensable because, quote, to come within the statute, the employee need only prove that some act or phase of the employment was a causative factor of the resulting injury. How do you reconcile that with your position? If I'm not mistaken, Your Honor, I don't remember that case specifically. It's one of the ones I don't, unfortunately, of course. But I believe that was a traveling employee case, am I not correct? The employee housekeeper was sitting on the floor polishing chrome on a door. After she stood up, she noticed that she missed a spot on the kick plate and bent down to polish it. She injured her back when she straightened back up. Like the claimant in our case, she was injured from a single instance of a routine bodily movement. The employer argued that she was not exposed to any risk greater than what the general public was exposed to. I would say in cases like Memorial Medical and CISPRO, we said that when workers' physical structures, diseased or not, give way under the stress of their usual tasks, the law views it as an accident arising out of and in the course of employment. And isn't that exactly what happened here? No, I don't believe so. Because in CISPRO, in that case, those are causation arguments. In CISPRO, there was no argument that it was in the course of. He was stepping out of a truck and he stepped in a puddle. The whole argument was, was his condition so deteriorated that any activity could have caused him to have that injury? And this court said, well, that doesn't matter. If you've already established arising out of in the course of,  was accelerated or aggravated. It was not going to go back and restart in the course of an arising out of. But we haven't gotten to that point yet in this case. We stopped at the arising out of because based upon the facts, under either analysis, the commission, which we have to give deference to on factual issues if there's evidence of support, and I believe there is, that he was not at a greater risk than the general public. And the one-time act of going from a kneeling to a standing position, when he was doing it on behalf of somebody else that didn't even hold his same position, was not peculiar to that position. One last thing I would like to point out, because I think it is somewhat compelling. If you look at the amicus brief that was drafted, it... Thank you. If there's no questions, I appreciate it. Ma'am, just so that I can... Again, I'm real confused. The majority... You're asking us to reverse. Yes. The majority did two things. It first, on factually against your client, and then it argued with the conclusion that the majority, the concurrence as to what the proper standard is. But you agree the majority got it right in terms of the standard. Is that right? I agree the majority in the appellate court attempted to utilize the correct standard. I do not agree that they fully did judge because of the... But do you disagree with the analysis of the special concurrence?  Okay. We disagree with the special concurrence's analysis. Okay. So, bottom line, you want us to reverse the majority. You disagree with their factual finding. You kind of agree with their legal analysis. Yes. And I will go through that briefly, just so we're understanding what the appellant is stating here. I do want to say this. I think the best way to understand both sides is this factual scenario. I'm in my office, and I'm preparing to argue before this court. And I say to my paralegal, can you please kneel down and grab my McAllister file from my bottom drawer? I really need to start looking at it. And she does, and as she's standing up, she pops her knee. I instructed her to do that. Ask her supervisor. Under the special concurrence, under Adcock, under counsel's theory, that is not compensable because that does not arise out of employment. And I think that that is absurd. If I'm instructing my employee to assist me, her job as a paralegal isn't to kneel. We know that. But what is the overall purpose of what she's doing is to assist the attorney in preparation for whatever that may be. Taking it one step further in our case, had the head chef, Bruce, walked out of his office, and Kevin McAllister saw him and said, Chef, I think there might be some carrots under that walk-in cooler. Can you instruct me, please, to go bend down and kneel down and look for them? Because if you don't instruct me, then this isn't going to arise out of employment. That's the absurdities we're going through here. And again, in counsel's theory, that is still not arising out of because it's an everyday common bodily activity. The court never defined what that is. We have to define it ourselves. I'm assuming bending, reaching, kneeling, all of this applies to common bodily movements. But nonetheless, it leads to absurdities. Now, I am looking at this as this honorable court's job is to review the evidence of the Illinois Workers' Compensation Commission, not the appellate court. The Illinois Workers' Compensation Commission did not ask if this was an act peculiar, nor did they ask if it was distinctly associated. Whichever phrase your honors choose to use, neither of those was decided. The only thing the commission did was apply neutral risk. They skipped the entire first analysis, which is distinctly associated or peculiar. The appellate court, Justice Tice, did try to do it. What the appellate court did, the majority, is they said, we have to look at Caterpillar Tractor. We have to look at three acts. But they did not define incidental to correctly. They defined incidental to as necessary to the fulfillment of his specific duties. And that is not the definition of incidental to. This court defined incidental to, it is belonging with or connected with. Not necessary. So neither the majority or the special concurrence used the correct analysis. Correct. Neither did. But the commission failed to even attempt it. And I think that's where their fault lies. And I think that's where counsel and I disagree largely. Is that the commission didn't even attempt it.  It's 815 of the record. And twice they talk about risks being particular. Particular is a definition of neutral risk. A neutral risk is one that has no particular employment characteristics. By using that phrase, they are defining neutral risk. And they're doing it twice in their decision. Secondly, their other step was saying, the commission finds the act of standing after having kneeled on one occasion not particular to petitioner's employment because it could have occurred while he was performing this task in any other area of his life. Again, not the standard. We don't care if he was performing this task at home the day before. It's not relevant to this discussion. The commission is inventing legal standards. That's why this is a de novo review. None of the factual evidence that they relied on leads to any specific conclusions that pertain to the actual law. If there's a carpenter working on a job site, your honors, and he's hammering away and accidentally hits his hand, do we ask, well, could that carpenter likewise use a hammer at home in his garage? Because if so, then this doesn't arise out of employment. No, that's absurd. We never ask those questions. But that's what the commission did here. They're saying, well, he could have been in his bed or checking under his car or kneeling in his driveway. None of that matters. That is not the standard. The act is a remedial statute. As this court has previously held, it's supposed to be viewed like that is more reasonable towards the injured worker than anybody else. This isn't a tort. And I think we're losing that a little bit. And for counsel to state that the ad hoc decision is appropriate is really asking this court to overturn Caterpillar Tracker and decades of case precedent. The standard is workable. It has worked. It has found cases to not arise and it has found cases to arise out of employment. And we need to reaffirm it. Because if we don't, the divideness of these courts, the lower courts, and the decisions that are coming out from both the appellate and the commission will continue to be divided. Again, we ask to please reinstate the decision of the arbitrator and we ask to reaffirm Caterpillar Tracker by this court. Thank you for your time. Thank you very much. Case number 124848. McAllister v. Illinois Workers Compensation. The commission will be taken under advisement as agenda number 6. I thank you very much, Ms. Palencia and Ms. Palencia for your arguments this morning.